# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| VERONICA EDMONDSON and ANNECIA L. DONIGAN,<br><br>    Plaintiffs,<br><br>v.<br><br>METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, RICHARD ROOKER, individually and in his official capacity as the Davidson County Circuit Court Clerk, and JOSEPH P. DAY, individually and in his official capacity as the Davidson County Circuit Court Clerk,<br><br>    Defendants. | No. 3:23-cv-00209-SHM<br><br>JURY DEMANDED |

## ORDER DENYING PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DISMISSING CASE WITH PREJUDICE

Plaintiffs sue Defendants for Title VII gender discrimination, age discrimination, First Amendment retaliation, and conspiracy to violate civil rights.

Before the Court are the Parties' cross-motions for summary judgment. (See ECF Nos. 56, 57, 61, 66.) Plaintiffs' Motions for Partial Summary Judgment (ECF Nos. 56, 57) are **DENIED**. Defendants' Motions for Summary Judgment (ECF Nos. 61, 66) are **GRANTED**.

## I. Background

### A. Procedural History

Plaintiffs filed their Complaint against Defendants Metropolitan Government of Nashville and Davidson County, Joseph P. Day (the current Davidson County Circuit Court Clerk), and Richard Rooker (the former Davidson County Circuit Court Clerk) on March 3, 2023, in the Middle District of Tennessee. (ECF No. 1.) Plaintiffs filed their Amended Complaint on June 22, 2023. (ECF No. 29.) Defendants did not file Motions to Dismiss. Discovery in this case closed on July 19, 2024. (See ECF No. 41.)

Plaintiff Veronica Edmondson filed her Motion for Partial Summary Judgment on August 2, 2024. (ECF No. 56.) Plaintiff Annecia L. Donigan filed her Motion for Partial Summary Judgment on August 2, 2024. (ECF No. 57.) Defendant Richard Rooker filed his Response in Opposition to those Motions and his own Motion for Summary Judgment on September 13, 2024. (ECF Nos. 61-62.) Defendants Joseph Day and the Metropolitan Government of Nashville filed a joint Motion for Summary Judgment on September 13, 2024. (ECF Nos. 66-67.) They filed their Responses in opposition to Plaintiffs' Motions for Partial Summary Judgment on October 18, 2024. (ECF Nos. 73-75.) Plaintiffs filed Responses in opposition to Defendants' Motions for Summary Judgment on November 1, 2024, and November 3, 2024. (ECF Nos. 77-82.) Defendants Day and Nashville filed a Reply to Plaintiffs' Responses on November 8, 2024. (ECF

2

No 83.) Defendant Rooker filed a Reply to Plaintiffs' Responses on November 13, 2024. (ECF No. 85.)

**B.    Summary of the Parties' Arguments**

Plaintiffs argue that, after decades of satisfactory service in the Davidson County Circuit Court Clerk's office in Nashville, Tennessee, they were fired because they did not offer sufficient political support to longtime Clerk Rooker's chosen successor, and their coworker, Defendant Day. Rooker, Day, and Day's campaign workers made multiple appeals to the entire office staff and to Plaintiffs, specifically, to support Day's campaign and warned that a lack of support could have consequences for Plaintiffs' employment. Plaintiffs chose to remain politically neutral. They were fired in retaliation. Plaintiffs also contend that their gender and age were motivating factors in their unjustified firing. They contend that there were no material issues with their job performance, and that the true reasons for their termination are unlawful.

Defendants Day and Nashville argue that Plaintiffs, and all other Deputy Clerks, serve at the pleasure of the elected Clerk, and that, when a new Clerk takes office, all Deputy Clerks' employment ends. Although Day chose to retain most of the office staff, he chose not to "re-hire" four employees, including Plaintiffs. Defendants deny that Day ever retaliated against anyone for failing to support his campaign sufficiently and deny

that he ever conspired with Rooker to do so. Defendants Day and Nashville also deny that Donigan was neutral in the election and represent that she supported Day's campaign. Day and Nashville maintain that Plaintiffs had a history of work performance and disciplinary issues, that Day was aware of those issues as an employee of the office, and that he chose not to retain Plaintiffs only because of their poor work performance——not their failure to support him politically, their gender, or their age. Defendants argue that Day did not know whether Plaintiffs had engaged in any political activity during the campaign.

Defendant Rooker's argument is largely the same, except that he argues he could not be liable for terminating Plaintiffs on his last day in office because he had handed over the reins to Day after Day had won the primary election. Rooker moved out of his physical office and allowed Day to move in to begin adjusting to his new role as the elected Clerk, including making staffing decisions.

C.   Undisputed Facts[1]

1.   Defendant Rooker served as the elected Davidson County Circuit Court Clerk from March 1993 until August 2022.[2] (See ECF No. 82 at 1-2.)

---

[1] Some of the following undisputed or admitted facts have been admitted only for purposes of summary judgment. References to factual contentions in briefs and memoranda include references to underlying discovery material, including deposition transcripts and sworn declarations.
[2] The exact day on which Defendant Rooker effectively ceased to be the Circuit Court Clerk is disputed. (See ECF No. 82 at 2.)

4

2.	The Circuit Court Clerk's office is located on property owned by Defendant Nashville. (See id. at 1.)

3.	Plaintiffs Veronica Edmondson and Annecia Donigan were hired as Deputy Circuit Court Clerks in the Davidson County Circuit Court Clerk's Office in January 2002 and September 1996, respectively.[3]

4.	Plaintiffs' positions were not covered by civil service. (See ECF Nos. 80 at 2-3; 82 at 2.)

5.	Plaintiffs were at-will employees of the Davidson County Circuit Court Clerk's Office, and signed an acknowledgement recognizing that status and that they could be removed by the Circuit Court Clerk with or without cause or notice—so long as the removal was not done for an illegal reason. (See ECF Nos. 64 at 2; 65 at 2; 74 at 2; 75 at 2; 82 at 2.)

6.	On September 27, 2021, Defendant Rooker held a staff meeting on Davidson County property and announced he would not seek re-election as Davidson County Circuit Court Clerk and would be supporting Defendant Day for the office. (See ECF Nos. 64 at 2; 65 at 2; 74 at 2; 75 at 2.)

---

[3] Although Defendant Rooker admits this undisputed fact (ECF Nos. 64 at 1; 65 at 1), Defendants Day and Nashville neither admit nor dispute this fact, and argue instead that it is not sufficiently established to be considered at summary judgment. (ECF Nos. 74 at 1; 75 at 1.) However, Day and Nashville have admitted that Plaintiffs were hired as Deputy Circuit Court Clerks in January 2002 and September 1996 in their Answers to Plaintiffs' Amended Complaint. (See ECF Nos. 33 at 2; 34 at 2.)

5

7.	At the time, Defendant Day served under Defendant Rooker as the Chief Deputy Clerk of Public Relations and Employee Development. (See ECF No. 80 at 2.)

8.	Diana Reed and Katina Floyd, other employees in the Clerk's office, never heard Defendant Rooker make any statement that Clerk's office employees would lose their jobs if they did not support Day's campaign. (See ECF No. 80 at 16.)

9.	Plaintiff Edmondson did not support the candidacy of Defendant Day, or any other candidate, in the Clerk election. (See ECF No. 64 at 6; 74 at 8.)

10.	Plaintiff Edmondson resided outside Davidson County, and was ineligible to vote in the 2022 Davidson County Circuit Court Clerk election. (See ECF No. 80 at 15.)

11.	Defendant Day won the primary election for Circuit Court Clerk in May 2022. (See ECF No. 80 at 1.)

12.	After Defendant Day won the primary election, Defendant Rooker vacated the physical office he had occupied in the Courthouse and moved to a smaller office on another floor of the building.[4] (See ECF No. 82 at 3.)

13.	Plaintiff Edmondson told her supervisors that she had a foot injury. (See ECF No. 80 at 12-13.)

---

[4]	Plaintiffs dispute this to the extent that it implies that Rooker no longer retained authority as the elected Clerk. (ECF No. 82 at 3.)

6

14. Defendant Day was elected to the office of Davidson County Circuit Court Clerk on August 4, 2022. (See ECF Nos. 64 at 6; 65 at 6; 74 at 9; 75 at 9.)

15. Plaintiffs' employment with the Clerk's office ended on August 31, 2022. (See ECF Nos. 64 at 6; 65 at 6; 74 at 9; 75 at 9-10.)

16. Plaintiffs were informed that their employment with the Clerk's office would end by Andre Walton, Defendant Day's campaign manager. (See ECF Nos. 64 at 6-7; 65 at 6-7; 74 at 9; 75 at 10.)

17. Defendant Rooker was not present when Plaintiffs were advised they would no longer be employed with the Clerk's office. (See ECF No. 82 at 4.)

18. When their employment ended, Plaintiffs were both 49-year-old women. (See ECF Nos. 64 at 7-8; 65 at 7-8; 74 at 10; 75 at 10.)

19. Plaintiffs cannot name any individuals who did not already work in the Clerk's office who were hired to "replace" them. (See ECF No. 82 at 10.)

20. Peyton McEhliney and Clay Townsend worked in the Clerk's office before Plaintiffs' employment ended and are men under 40 years old. (See ECF Nos. 64 at 8; 65 at 8; 74 at 10-11; 75 at 11; ECF No. 82 at 10.)

7

21. When Plaintiffs' employment with the Clerk's office ended, the employment of two other employees, Christy Allen and Polly Owens, also ended. All four were women over 40 years old. (See ECF Nos. 64 at 9; 65 at 9; 74 at 11; 75 at 11; 82 at 4.)

22. When Plaintiffs left the Clerk's office, 59 of the 88 employees (67%) were female, and most were over the age of 40. (See ECF No. 82 at 10-11.)

**D.  Facts Undisputed by Defendants Day and Nashville Only**

1. Clay Townsend and Devonte Edmondson, Day's brother-in-law, asked Plaintiff Donigan to place yard signs for Defendant Day's campaign. (See ECF No. 75 at 9.)

**E.  Facts Undisputed by Defendant Rooker Only**

1. Both Plaintiffs were asked to support Defendant Day's candidacy. (See ECF Nos. 64 at 5; 65 at 5.)

2. Plaintiff Donigan did not support Defendant Day or any other candidate in the Clerk election. (See ECF No. 65 at 6.)

**F.  Contested Issues**

1. When Defendant Rooker's term of office ended and he was replaced by Defendant Day. Day, Nashville, and Plaintiffs contend that Defendant Rooker's term as Clerk ended August 31, 2022, and that Defendant Day did not take office until September 1, 2022. (See ECF Nos. 68-1 ¶ 2; 80 at 2; 82 at 4.) Defendant Rooker argues that Defendant Day was sworn in on August 27, 2022. (See ECF No. 82 at 3-4.) Plaintiffs argue

8

that Defendant Day was sworn in on August 29, 2022, but served as Chief Deputy Clerk until the end of Rooker's term, which continued through August 31, 2022. (See id.)

2. When Defendant Day's campaign effectively ended. All Defendants argue that Day was effectively elected Clerk after he won the Democratic party primary, because the Republican party nominated no one for the Clerk's position. (See ECF Nos. 80 at 1-2; 82 at 2-3.) Plaintiffs argue that Day's active campaigning continued after he won the primary. (See ECF Nos. 80 at 1-2; 82 at 2-3.)

3. Whether Defendants Rooker and Day ever said or implied to employees of the Clerk's office that a lack of sufficient support for Day's campaign would have consequences for their employment. (See ECF Nos. 64 at 2-3, 5; 65 at 2, 5; 74 at 2-3, 5-8; 75 at 6; 82 at 6.)

4. Whether and to what extent Plaintiffs, individually or collectively as part of the office staff, were asked to support Day's campaign. (See ECF Nos. 64 at 3-4; 65 at 3-4; 74 at 4-5, 8; 75 at 3-6, 8-9; 80 at 14; 82 at 5-6.)

5. Whether and to what extent efforts by other individuals to obtain Plaintiffs' campaign support was directed by Day and Rooker. (See ECF No. 80 at 14.)

9

6.  Whether Donigan did in fact support Day's campaign, or whether she supported no candidate in the Clerk election. (See ECF No. 75 at 9.)

7.  Whether Donigan knowingly attended a campaign event for Day that she maintains was advertised as a "family fun event." (See ECF No. 80 at 15.)

8.  Whether Day and Rooker knew of Plaintiffs' political positions during the campaign and election. (See ECF Nos. 80 at 3-5; 82 at 6-7.)

9.  Whether Plaintiffs were terminated from their positions in the Clerk's office, or whether their employment ended with Rooker's term as Clerk, and Day declined to re-hire them as Deputy Clerks. (See ECF Nos. 64 at 7; 65 at 7; 74 at 9; 82 at 4.)

10. Whether Defendant Day alone made the decision to end Plaintiffs' employment with the Clerk's Office. (ECF No. 80 at 2.) Plaintiffs allege that Day and Rooker are both responsible for Plaintiffs' termination, and that Day sought and received advice from Rooker on those staffing decisions. (See ECF No. 82 at 4-5.)

11. Whether and to what extent Plaintiffs had a history of poor performance and disciplinary issues during their employment in the Clerk's office. (See ECF Nos. 80 at 6-14; 82 at 11-12.)

10

12. Whether and to what extent Plaintiffs had "policy-making authority" as Deputy Clerks and were considered "arms of the court." (See ECF No. 82 at 8.) Plaintiffs argue against Rooker's assertion that they had such authority. (See id.)

13. Whether the other two employees whose employment ended supported Day's campaign, and whether they were fired because they supported the campaign insufficiently. (See ECF No. 80 at 16-17.)

14. Whether and to what extend Day and Rooker consulted about Plaintiffs' support for Day's campaign and ending Plaintiffs' employment. (See ECF No. 82, 4-5.)

15. Whether ending Plaintiffs' employment was motivated by their insufficient support for Day's campaign. (See ECF Nos. 64 at 2-3, 5; 65 at 2, 5; 74 at 2-3, 5-8; 75 at 6; 82 at 6.)

16. Whether ending Plaintiffs' employment was motivated by poor performance and disciplinary issues. (See ECF No. 80 at 6-7.)

17. Whether ending Plaintiffs' employment was motivated by their gender. (See ECF Nos. 80 at 5-6; 82 at 9.)

18. Whether ending Plaintiffs' employment was motivated by their age. (See ECF Nos. 80 at 5-6; 82 at 8-9.)

19. Whether Plaintiffs were "replaced" by Peyton McEhliney and Clay Townsend. (See ECF Nos. 64 at 8; 65 at 8; 74 at 10; 75 at 10-11; 80 at 15.)

11

20. Whether Day and Rooker conspired to violate Plaintiffs' civil rights. (See ECF No. 82 at 12.)

## II. Jurisdiction

Plaintiffs have asserted claims arising under federal law, including First Amendment civil rights violations under 42 U.S.C. § 1983; a conspiracy to violate civil rights under 42 U.S.C. § 1985; gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; and violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq. This Court has federal question jurisdiction over those claims pursuant to 28 U.S.C. § 1331.

## III. Standard of Review

Summary judgment is granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of her case. Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018). A fact not admitted or stipulated may not be "genuinely disputed" if the opposing party objects that it cannot be presented or supported "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c).

There is a dispute about a material fact if the evidence is such that a reasonable jury could return a verdict for the nonmovant. EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc). Inferences must be drawn in the light most favorable to the nonmovant. Bledsoe v. Tenn. Valley Auth. Bd. of Dirs., 42 F.4th 568, 578 (6th Cir. 2022). The Court "is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

Although summary judgment must be used carefully, it "is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" F.D.I.C. v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

## IV. Law

### A. Title VII Gender Discrimination

A plaintiff alleging gender discrimination in violation of Title VII of the Civil Rights of 1964 establishes a prima facie case when she shows that: (1) she was a member of a protected class; (2) she was subject to an adverse employment decision; (3) she was qualified for the relevant position; and (4) similarly

situated non-protected employees were treated more favorably. See Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 775-79 (6th Cir. 2016) (articulating the framework adopted from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1972)).

When a plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. See id. At summary judgment, the employer need only raise "a genuine issue of fact as to whether it discriminated against the plaintiff." See id. at 778-79. It need not persuade the Court of its actual motivation. See id.

Once the employer has provided a legitimate, nondiscriminatory reason, "the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination," a burden which "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." See id. at 779 (quoting Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 812 (6th Cir. 2011); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

**B. Age Discrimination**

A plaintiff alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") may similarly use the McDonnell Douglas burden shifting framework to establish her

14

claim using indirect evidence. See Geiger v. Tower Automotive, 579 F.3d 614, 622-23 (6th Cir. 2009). To establish a prima facie case of an ADEA violation, a plaintiff must show that: "(1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker." Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 317 (6th Cir. 2007) (quoting Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 547 (6th Cir.2004)). If the plaintiff establishes her prima facie case, the burden of production shifts to the employer to provide a non-discriminatory reason for the adverse employment action. See id. If the employer articulates a non-discriminatory reason, "the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination." See id.

### C.   First Amendment Retaliation

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I. The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." Barton v. Neeley, 114 F.4th 581, 590 (6th Cir. 2024) (quoting Wooley v. Maynard, 430 U.S. 705, 714 (1977)). The

First Amendment also generally protects public employees from adverse employment actions based on "political patronage" (i.e., dismissals for failure to support a particular candidate or party). See Summe v. Kenton Cnty. Clerk's Off., 604 F.3d 257, 264-65 (6th Cir. 2010).

Forty-two U.S.C. § 1983 provides a cause of action for any person to obtain civil justice for deprivations of her constitutional rights committed by government actors under color of law. A First Amendment retaliation claim under § 1983 requires a plaintiff to prove that:

> (1) [she] engaged in protected conduct; (2) an adverse action was taken against plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

Richards v. Perttu, 96 F.4th 911, 917 (6th Cir. 2024) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (Moore, J., plurality opinion)). To meet this test, "the defendant must have known about the protected activity." Thaddeus-X, 175 F.3d at 386-87 n. 3. If the defendant did not know about the protected conduct, it necessarily could not motivate the adverse action. See id.

The temporal proximity between the protected conduct and the adverse action may help to establish or defeat a finding of

16

causation. See Lemaster v. Lawrence Cnty., Kentucky, 65 F.4th 302, 310 (6th Cir. 2023). At the extremes, close proximity alone, days or weeks, can rarely permit an inference of causation, and a "total" lack of proximity can "doom a claim...unless the plaintiff uncovers smoking-gun evidence" of causation. See id. Generally, temporal proximity is not sufficient to support an inference of causation, and the greater the temporal distance, the more evidence a plaintiff must show to establish causation. See id.

When a plaintiff satisfies the three elements, the burden shifts to the defendant to prove that the speech was not the but-for cause of the adverse action. See id. at 309-310. If the defendant "would have taken the same action even if the plaintiff had not spoken," the defendant may avoid liability. Id.

### D. Conspiracy to Violate Civil Rights

Forty-two U.S.C. § 1985(3) gives individuals a civil cause of action for conspiracies by "two or more persons" to unlawfully interfere with a plaintiff's civil rights. To establish a conspiracy, a plaintiff must show that: (1) "there was a single plan," (2) "the alleged coconspirator shared in the general conspiratorial objective," and (3) "an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." Rieves v. Town of Smyrna, Tennessee, 67 F.4th 856, 862 (6th Cir. 2023) (quoting Hooks v. Hooks, 771 F.2d 935, 944 (6th Cir. 1985)).

17

Two employees within a single government entity do not satisfy § 1985(3)'s "two or more persons" requirement to form a conspiracy unless one or more of them are acting outside the scope of their employment.  See Jackson v. City of Cleveland, 925 F.3d 793, 817-18 (6th Cir. 2019); Irons v. City of Bolivar, 897 F. Supp. 2d 665, 669 (W.D. Tenn. 2012) (applying the "intra-corporate conspiracy doctrine" to government entities in § 1985(3) conspiracy claims).

## V.   Analysis

### A.   Cross-Motions for Summary Judgment on the Gender and Age Discrimination Claims

Because the factual and legal analysis of Plaintiffs' gender and age discrimination claims is nearly identical, they can be resolved concurrently. Two issues are in dispute in Plaintiffs' gender and age discrimination claims: (1) whether Plaintiffs can meet the final element of their prima facie case: that similarly situated men were treated more favorably and that Plaintiffs were replaced by younger employees, which Plaintiffs attempt to satisfy by arguing that they were replaced by two men under 40 years old; and (2) whether Defendants' proffered legitimate, non-discriminatory reason for ending Plaintiffs' employment is pretextual. See Jackson, 814 F.3d at 775-79; Tuttle, 474 F.3d at 317.

### 1. Defendants' Motions on the Title VII and ADEA Claims[5]

Defendants make two threshold arguments. First, that Davidson County Circuit Court Deputy Clerks are not entitled to civil rights protection under Title VII and the ADEA because they are "officer[s]" of an elected official's "personal staff." 42 U.S.C. § 2000e(f). (ECF No. 67 at 17-20.) Defendants have cited no case holding that county circuit court deputy clerks in Tennessee are excluded from civil rights protections. Defendants' assertions are also inconsistent with the Clerk's office employee manual. (See ECF No. 77 at 15-17.) Because Plaintiffs' Title VII and ADEA claims fail for independent reasons, the Court need not accept Defendants' invitation to decide this de novo question of law. Second, Defendants argue that Plaintiffs were never terminated, and that Day merely declined to rehire them in his administration at the close of Rooker's term. Because Plaintiffs' Title VII and ADEA claims fail for independent reasons, the Court need not decide this issue.

### a. Whether Plaintiffs were Replaced

Defendants dispute Plaintiffs' argument that Edmondson and Donigan were replaced by Peyton McEhliney and Clay Townsend, respectively. (See ECF Nos. 62 at 21-23; 73 at 19-21.) Day's sworn declaration represents that neither Plaintiff was replaced by any

---

[5] In this section, the Court draws all reasonable inferences in the light most favorable to Plaintiffs. See Bledsoe, 42 F.4th at 578.

employee, but that "[t]heir job functions were reassigned to other staff." (ECF No. 68-1 ¶ 52.) Both of Plaintiffs' "replacements" had worked in the Clerk's office before Plaintiffs' employment ended, although there was a break in Townsend's employment with the Clerk's office between August and December 2022. (See ECF No. 68-1 ¶¶ 52-54.)

If other Deputy Clerks in the office assumed Plaintiffs' tasks in addition to other tasks, Plaintiffs were not "replaced." See Geiger, 579 F.3d at 623; Barnes v GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990) ("[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.").

Plaintiffs argue that McEhliney and Townsend assumed Plaintiffs' job duties after Plaintiffs' termination. Plaintiffs rely on their own depositions and answers to Defendants' interrogatories. (See ECF Nos. 56-1 at 5; 57-1 at 5.) Plaintiffs base their assertions on conversations that Edmondson had with McEhliney and that Donigan had with Townsend and Katina Flood in which Plaintiffs were told that McEhliney and Townsend replaced them. (See ECF Nos. 56-2 at 3-4; 57-2 at 4-5.) Defendants argue

that Plaintiffs cannot rely on those conversations because they would be inadmissible hearsay.

The Court need not resolve this issue. Even if the Court were to assume that Plaintiffs could sustain their prima facie case, their claims would fail at the subsequent steps of the burden shifting framework.

### b. Defendants' Non-Discriminatory Reason

Defendants have provided a legitimate, non-discriminatory reason for ending Plaintiffs' employment: poor performance and disciplinary issues. (ECF Nos. 68-1 at 5-8.) This offer of a non-discriminatory reason shifts the burden to Plaintiffs to show that Defendants' reason is pretextual.

Defendants support their non-discriminatory reason with evidence. Day's sworn declaration details issues with Donigan's work performance, including that: she "was reprimanded for making critical errors on orders of protection, which resulted in orders being dismissed for failure to prosecute because the petitioners were not notified of hearing dates;" she struggled to manage her workload more than other Deputy Clerks; she "resisted change, avoided or refused to perform tasks she did not like, and was difficult to work with;" although her job required it, "she sometimes refused to interact with the public;" Day had to meet with her in 2019 when she refused to do orders of protection; he had to meet with her twice in 2021 because she refused to be cross-

trained to work the front counter; and Day believed her attitude "created a negative work environment" in the office. (ECF No. 68-1 at 2-3.)

Addressing Plaintiff Edmondson, Day's declaration details performance issues that include: "failing to complete her work on emergency committals before she left the office to go to court," which "jeopardized the court's ability to process emergency committals in a timely fashion;" a "history of making mistakes on emergency committals and other important tasks," a serious issue given that deprivation of liberty is at stake; her struggle to manage a workload consistent with that of other Deputy Clerks; resistance to change; avoidance of tasks she did not like; speaking disrespectfully to coworkers; being "difficult to work with;" and cumulatively, issues requiring Day, as Chief Deputy Clerk, to spend "more time dealing with Ms. Edmondson's attendance and workplace issues than...the typical deputy clerk." (ECF No. 68-1 at 3-4.)

### c. Whether Defendants' Reason is Pretextual

Plaintiffs have not offered sufficient evidence to establish that Defendants' nondiscriminatory reason is pretextual and that Plaintiffs' gender or age was the reason for ending their employment.

Plaintiffs' main evidence for pretext includes: findings by an expert witness, who concludes that Plaintiffs "were, more likely than not, terminated for inappropriate reasons including their

22

lack of support for the incoming elected official" (ECF No. 54 at 13); that Plaintiffs "held their respective position for a period of 20 years without termination or even the threat of termination" (ECF No. 77 at 21); and that the other two terminated employees were also women over 40 years of age. (ECF No. 77 at 22.) Plaintiffs also offer a partially-dated, sworn declaration by Christy Allen, one of the other employees terminated alongside Plaintiffs, that "there was a rumor in the office that any positions lost in the office would come from older employees who were about to be able to retire early" and that Stephanie Chatman, Allen's supervisor, told Allen that "any employees who were to lose their jobs would [be] those who were at retirement age or approaching retirement age."[6] (ECF No. 56-5 ¶¶ 12, 25-26; 57-5 ¶¶ 12, 25-26; 77 at 21.)

The expert concludes that Plaintiffs' performance and discipline issues were not recent enough to warrant termination and that, even if they were recent, Plaintiffs were not warned "that future issues would result in termination." (See ECF No. 54 at 12-13.) The expert bases her conclusion on information in Plaintiffs' personnel files. The expert found that Donigan received verbal reprimands in 2008, 2018, and 2019; she received negative performance evaluations in 2002, 2003, 2007, 2009, 2010,

---

[6] Defendants argue that Plaintiffs may not rely on this declaration because, although it states it is sworn and Allen signed it, it contains only the month and not the day of the declaration. (ECF no. 83 at 2.) Even if the declaration were admissible, it would not be a basis for a reasonable jury to find for Plaintiffs. An unattributed office "rumor" is not only inadmissible hearsay, it lacks probative value.

23

and 2014; she was transferred to another area of the court in 2009 because of issues with her employment; and she received two attendance commendation letters in 2012 and 2013. (See id. at 9-10.) The expert finds that Edmondson received negative performance evaluations based on her lack of initiative in 2011 and attendance issues in 2016, 2017, and 2018, and that she received a recognition for 20 years of "faithful service" from human resources in 2022. (See id.) Because the verbal reprimands did not list termination as a potential next step, and because the negative yearly evaluations were not "recent," Plaintiffs' expert concludes that poor performance was not the true reason for Plaintiffs' termination. (See id. at 13.) Defendants argue that the expert's conclusion would be inadmissible at trial because it is an improper legal conclusion.[7]

The most important issue with Plaintiffs' expert report is that it does not consider all of the evidence in the record about Plaintiffs' disciplinary issues. Day's sworn declaration details disciplinary issues that occurred in 2021 and 2022, more recently than the issues the expert analyzed. (See ECF No. 68-1 at ¶¶ 13, 17, 25-27.) Even assuming the expert's report were admissible,

---

[7] Defendants also argue that Plaintiffs' expert herself admitted that her opinions were legal conclusions, referencing portions of her deposition to support that claim. (See ECF No. 83 at 2-3.) Defendants have failed to file the referenced exhibit to the expert's deposition transcript, however, so the Court is left only with her report and the argument that it would "invade[] the province of the court." Berry v. City of Detroit, 25 F.3d 1342, 1454-54 (6th Cir. 1994).

24

this unconsidered evidence would undermine the expert's opinion that Plaintiffs' disciplinary issues were insufficiently recent to warrant termination.

Perhaps Plaintiffs' most relevant evidence of age discrimination is the statement that Allen says was made by Chatman, who had a supervisory role in the office, that employees at or approaching retirement age would be the ones whose jobs were at risk. (ECF No. 56-5 ¶¶ 12, 25-26; 57-5 ¶¶ 12, 25-26; 77 at 21.) No party has taken Chatman's deposition or filed her sworn declaration. Plaintiffs have not argued that they would reasonably expect to elicit that testimony from Chapman at trial. Plaintiffs do not allege that Chatman was speaking on behalf of Rooker or Day, that Chatman had heard Rooker or Day suggest such a policy, that Chatman had any knowledge of their thought process, or that Chatman was doing anything other than repeating a rumor that was apparently going around the office.

For this evidence to be admissible and to have probative value, the Court would have to assume both that: (1) Plaintiffs could admit this evidence through direct testimony by Chatman or through testimony by Allen and a successful argument that Chatman's statement was not hearsay because she was speaking within the scope of her employment on behalf of the Clerk; and (2) Chatman's statement represented her insider knowledge of Defendants' thinking, and not her own intuition or repetition of the office

25

rumor that Allen mentions in the preceding paragraph of Allen's declaration. Plaintiffs make no argument they could satisfy those requirements. They have not addressed Defendants' argument that Allen's entire declaration should not be considered because it is not properly dated. At summary judgment, the Court must make all *reasonable* inferences in the nonmovant's favor. See Bledsoe, 42 F.4th at 578. It need not search the entire record for facts or make arguments on behalf of a party. See InterRoyal Corp., 889 F.2d at 111. Here, Plaintiffs have not developed a record that would allow the Court to draw inferences in their favor such that a reasonable jury could return a verdict for them.

Although Plaintiffs do not need a 'smoking gun,' like a direct admission from Day, their response is insufficient to establish that Defendants' proffered reason is pretextual given the context. Plaintiffs had detailed performance issues, and most of the employees in the Clerk's office, 59 of 88, or 67 percent, were also women over 40 years old. (See ECF No. 62 at 19; 62-1 at 4.)

The Court need not address Defendant Rooker's argument that he cannot be liable for ending Plaintiffs' employment on the last day of his term because he claims he was uninvolved in the decision to terminate or fail to rehire them. Assuming *arguendo* that a reasonable jury could conclude he was also responsible for ending Plaintiffs' employment, Plaintiffs' claims would fail for the reasons above, and Rooker would be entitled to summary judgment.

### 2. Plaintiffs' Motions on the Title VII and ADEA Claims

Because no reasonable jury could find for Plaintiffs on their Title VII and ADEA claims, Plaintiffs are not entitled to summary judgment as a matter of law.

Because no reasonable jury could conclude that Defendants terminated Plaintiffs because of their gender or age, Plaintiffs' Motions for Partial Summary Judgment on their Title VII and ADEA claims are **DENIED**, and Defendants' Motions for Summary Judgment on Plaintiffs' Title VII and ADEA claims are **GRANTED**. See Ford Motor Co., 782 F.3d at 760.

### B. Cross-Motions for Summary Judgment on the § 1983 First Amendment Retaliation Claim

Defendants Day and Nashville do not dispute at summary judgment that Plaintiffs can satisfy the first two elements of First Amendment Retaliation: protected activity and adverse action.[8] (See ECF No. 67 at 7.) The remaining questions are: (1) whether Plaintiffs can provide admissible evidence sufficient to convince a reasonable jury that "the adverse action was motivated at least in part by the Plaintiff's protected conduct," Richards,

---

[8] Defendant Rooker seems to claim that remaining neutral during the election would not be protected by the First Amendment. If Defendants had in fact terminated Plaintiffs because Plaintiffs chose not to endorse a candidate, or did not sufficiently support their boss's preferred candidate, Defendants would violate the First Amendment. See Barton, 114 F.4th at 590. The First Amendment not only protects individuals for their voiced speech, it protects them from being forced to speak. Id. The Court will assume that Plaintiffs' claimed election neutrality is protected conduct for purposes of Summary Judgment.

96 F.4th at 917; and (2) if Plaintiffs can meet that burden, whether Defendants can prove that the protected activity was not the but-for cause of their termination. See Lemaster, 65 F.4th at 309-310.

### 1. Defendants' Motions on Retaliation Claims[9]

### a. Retaliation

Defendants first argue that, because no reasonable jury could find that Day or Rooker knew about Plaintiffs' protected activity, neither Day nor Rooker could not have retaliated against Plaintiffs. (See ECF No. 67 at 7-9.) Although Day and Rooker represent in sworn declarations that they did not know which candidate Plaintiffs supported in the election (ECF Nos. 62-1 at 68-1 at 6), the record shows that Day had access to lists of individuals who had worked on the campaign (ECF Nos. 80-5; 80-6) and a list of those who had made financial contributions to the campaign. (ECF No. 80-1.) From the absence of Plaintiffs' names on those lists, Plaintiffs argue that a reasonable jury could infer that Day believed Plaintiffs did not sufficiently support his campaign. As a general election candidate with access to those lists, a reasonable jury could infer that Day was aware of who did and did not materially support his campaign.

---

[9] In this section, the Court draws all reasonable inferences in the light most favorable to Plaintiffs. See Bledsoe, 42 F.4th at 578.

28

### b. Causation

Defendants next argue that Plaintiffs cannot meet their burden on the causation element of their claim because Plaintiffs have no admissible evidence that would permit a reasonable jury to find that Plaintiffs' protected conduct at least partially motivated their termination.[10] (See ECF No. 67 at 9-12.)

Plaintiffs base their First Amendment retaliation claims on conversations they had with Diana Reed and Katina Floyd, who told Plaintiffs that Rooker had said some people would lose their jobs if they did not support Day's campaign. In addition to arguing that Plaintiffs' evidence would be inadmissible hearsay at trial (See ECF No. 67 at 10), Defendants have filed sworn declarations from Reed and Floyd denying they ever heard Rooker make such a statement. (See ECF No. 62-4 at 3, 8.)

Plaintiffs argue that their expert opinion and the fact that Plaintiffs "were never terminated in the twenty years prior to Defendant Day becoming the Circuit Court Clerk" or "threatened with termination" support an inference that their protected activity, not performance issues, motivated their termination.

---

[10] Plaintiffs first argue that Defendants are liable for First Amendment retaliation under § 1983 because Defendants violated a number of Tennessee statutes governing the conduct of political officials. (ECF No. 57-1 at 11-13.) Merely alleging that those statutes have been violated does not satisfy the elements of a First Amendment retaliation claim in the Sixth Circuit. Even if Defendants violated Tennessee law by soliciting or attempting to intimidate employees to donate to the campaign on government property, Plaintiffs would need to show that they were fired because of their protected speech. See Richards, 96 F.4th at 917.

Plaintiffs' protected activity occurred over a span of months as the campaign progressed throughout the spring and summer of 2022. Their protected activity was not a single event. They did not make a political post on social media and get fired the next day. Plaintiffs argue that they were fired for what they did not say or do over a course of months.

The primary election occurred in May 2022, after which Defendants argue the campaign was essentially over because Day was the only candidate from one of the two major parties on the general election ballot. The general election occurred on August 4, 2022. The adverse action occurred on August 31, 2022. By the time the adverse action occurred, months had passed since the end of Day's primary campaign, and weeks had passed since he had won his essentially unopposed election. August 31 also coincided with the end of the Rooker administration. The new Clerk ended Plaintiffs' employment on taking office. Given the context of this case, the temporal link is insufficient to permit a reasonable fact finder to infer that Plaintiffs' lack of support for Day was a but-for cause of his action. See Lemaster, 65 F.4th at 310.

As analyzed above, Defendants had an "obviously nonretaliatory basis" for the decision to terminate or not to rehire Plaintiffs: poor performance. See supra Section V.A.1.b.; Vereecke v. Huron Valley School Dist., 609 F.3d 392, 401 (6th Cir. 2010) ("The absence of close temporal proximity and the presence

30

of an obviously nonretaliatory basis for the Defendants' decision amount to insufficient evidence to permit an inference of retaliatory motive.") (See ECF No. 67 at 11-12.)

The record on which Plaintiffs' expert bases her conclusion that Plaintiffs were not fired for performance issues is deficient. (See supra Section V.A.1.b.) The deficiency is compounded by the expert's conclusion that Plaintiffs were terminated for political activity. That conclusion is based in part on the disavowed statement of Katina Floyd that Rooker said employees who did not campaign for Day would be fired. (See ECF No. 54 at 10.) A sworn declaration by Floyd has been filed stating she never heard Rooker or Day make such a statement. (ECF No. 68-8.) The expert bases her conclusion on Floyd's disavowed statement, a work meeting in which Rooker allegedly asked staff to support Day, requests by co-workers that Plaintiffs help with the campaign, and citations to various Tennessee statutes and county documents.

Plaintiffs argue that they had been retained for decades and received raises and some positive performance reviews, were not active in Day's campaign, and were fired by the new Clerk. That is not enough for a reasonable jury to find that the true reason for Day's adverse action was Plaintiffs' insufficient support. Based on the record developed and the evidence admissible at trial, Plaintiffs cannot prevail.

31

### 2. Plaintiffs' Motions on Retaliation Claims

Because no reasonable jury could find for Plaintiffs on their § 1983 First Amendment retaliation claims, Plaintiffs are not entitled to summary judgment on those claims as a matter of law.

Because no reasonable jury could conclude that Defendants took an adverse action against Plaintiffs because of Plaintiffs' protected conduct under the First Amendment, Plaintiffs' Motions for Partial Summary Judgment on their § 1983 First Amendment retaliation claims are **DENIED**, and Defendants' Motions for Summary Judgment on Plaintiffs' § 1983 First Amendment retaliation claims are **GRANTED**. See Ford Motor Co., 782 F.3d at 760.

### C. Defendants' Motions for Summary Judgment on the § 1985 Conspiracy Claim[11]

Plaintiffs allege that Rooker and Day conspired to retaliate against Plaintiffs for exercising their First Amendment rights. At all relevant times, including when adverse action was taken on August 31, 2022, both Rooker and Day worked for the same employer, the Davidson County Circuit Court. To sustain a claim against "two or more persons," the intra-corporate conspiracy doctrine requires Plaintiffs to show that one of the Defendants acted outside the scope of his employment. See Jackson, 925 F.3d at 817-18. Plaintiffs' allegations of a conspiracy are not supported by facts showing that one or both Defendants acted outside the scope of

---

[11] In this section, the Court draws all reasonable inferences in the light most favorable to Plaintiffs. See Bledsoe, 42 F.4th at 578.

their employment when Day took the official action of terminating or failing to rehire Plaintiffs. See id.

Plaintiffs' conspiracy claims also fail because a reasonable jury could not find Plaintiffs have established the underlying constitutional violation. See Umani v. Michigan Dep't of Corr., 432 F. Appx. 453, 462 (6th Cir. 2011).

Because Plaintiffs cannot establish the elements of a conspiracy under § 1985 given the intra-corporate conspiracy doctrine and the absence of an underlying constitutional violation, Defendants' Motions for Summary Judgment on Plaintiffs' § 1985 Conspiracy Claim are **GRANTED.**

## VI. Conclusion

Because Plaintiffs have not developed a record sufficient to permit a reasonable jury to find in their favor on any claims, Plaintiffs' Motions for Partial Summary Judgment (ECF Nos. 56, 57) are **DENIED.** Defendants' Motions for Summary Judgment (ECF Nos. 61, 66) are **GRANTED.**

This action is **DISMISSED WITH PREJUDICE.**


SO ORDERED this *18th* day of February, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

33